IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| Ghary David Won, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 18-00381 ACK-RLP |
| | ) |
| Nelnet Servicing, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## ORDER GRANTING DEFENDANT NELNET SERVICING, LLC'S MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

For the reasons discussed below, Defendant Nelnet

Servicing, LLC's Motion to Dismiss, or Alternatively, for

Summary Judgment, ECF No. 13, is hereby GRANTED.

### PROCEDURAL BACKGROUND

On October 4, 2018, Plaintiff Ghary David Won

("Plaintiff Won") filed a Complaint against Defendants Experian

Information Solutions, Inc. ("Defendant Experian") and Nelnet

Servicing, LLC[1] ("Defendant Nelnet") for violations of the Fair

---

[1] Defendant Nelnet notes that Nelnet, Inc. was improperly named
in Plaintiff Won's Complaint and that Nelnet Servicing, LLC is
the proper defendant in this case.  Motion at 1.  The Court
issued a minute order on March 27, 2019, in which it directed
Defendant Nelnet to file an explanation about this discrepancy
so that the Court could correct the record.  ECF No. 39.
Defendant Nelnet responded on March 28, 2019 and stated that
Nelnet Servicing, LLC is the proper defendant.  ECF No. 40.
Defendant Nelnet also stated that Nelnet Servicing, LLC
acknowledges and accepts service of the Complaint and the

1

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et seq</u>. ECF No.
1. On November 14, 2018, Defendant Nelnet filed a Motion to
Dismiss Complaint or, Alternatively, for Summary Judgment
("Motion"). ECF No. 13. After being prompted by the Court,
Defendant Nelnet filed a Concise Statement of Facts ("Def. CSF")
on December 19, 2018.[2/] ECF No. 20. On that same date,
Defendant Nelnet filed a Request for Judicial Notice, ECF No.
21, requesting that the Court take judicial notice of Exhibits
A-D submitted concurrently with its Motion, and Exhibit E
submitted concurrently with its Request for Judicial Notice.

The Court set a hearing on Defendant Nelnet's Motion
for February 5, 2019. On January 7, 2019, Plaintiff Won filed a
Consent Motion to Continue Hearing, ECF No. 22, in which he
sought a 30-day continuance of the hearing in order to
effectively utilize Defendant Nelnet's discovery responses,

---

Court's jurisdiction over it. On April 9, 2019, the Court
entered an order and stipulation in which the parties agreed to
substitute Nelnet Servicing, LLC for Nelnet, Inc. as the proper
party defendant and dismissed Nelnet, Inc. without prejudice.
ECF No. 42.
[2/] On December 14, 2018, the Court issued a minute order, ECF No.
18, noting that Defendant Nelnet failed to file a concise
statement of facts contemporaneously with its Motion in
accordance with Local Rule 56.1(a) of the Local Rules of
Practice for the United States District Court for the District
of Hawai`i ("Local Rules"). The Court directed Defendant Nelnet
to consult the Local Rules and to file a concise statement of
facts in support of its Motion.

which were due on January 7, 2019.  The Court continued the hearing until April 1, 2019.  ECF No. 23.

On February 25, 2019, Plaintiff Won filed a Motion for Entry of an Agreed Order Dismissing Defendant Experian, which Defendant Nelnet did not oppose. ECF No. 29.  Counsels for Plaintiff Won and Defendant Experian stated that Plaintiff Won had settled his claims against Defendant Experian (Counts I through IV of the Complaint) and asked the Court to dismiss those claims with prejudice.  The Court did so in an order dated March 4, 2019.  ECF No. 30.  The remaining claims (Counts V through VII of the Complaint) are asserted solely against Defendant Nelnet and are the subject of this Order.

On March 11, 2019, Plaintiff Won filed his Memorandum in Opposition to Defendant Nelnet's Motion ("Opposition"), ECF No. 31, Concise Statement of Facts in Opposition ("Pl. CSF"), ECF No. 32, and an Objection to Defendant Nelnet's Request for Judicial Notice.  ECF No. 33.  On March 18, 2019, Defendant Nelnet filed its Reply.  ECF No. 36.

After reviewing the parties' filings, the Court issued a minute order on March 18, 2019 in which it directed the parties to resubmit copies of their CSFs because the CSFs failed to comply with the Local Rules.  ECF No. 35.  The parties

attached their declarations and evidentiary exhibits[3] to their

memoranda in support of and in opposition to Defendant Nelnet's

Motion rather than to their CSFs as Local Rule 56.1(h) requires.

Defendant Nelnet submitted its corrected CSF, ECF No. 37, on

March 19, 2019, and Plaintiff Won submitted his corrected CSF,

ECF No. 38, on that same date.  The Court held a hearing on

Defendant Nelnet's Motion on Monday, April 1, 2019 at 11:00 a.m.

## FACTUAL BACKGROUND

The undisputed facts of this case are as follows.  In

October 2012, Plaintiff Won executed a Master Promissory Note

("MPN") for a federal direct student loan under the William D.

Ford Federal Direct Loan Program through the United States

Department of Education ("DOE").  Pl. CSF ¶ 11; Ex. 4, ECF No.

38-4.  The loan was serviced by Defendant Nelnet.  Def. CSF ¶ 5;

Pl. CSF ¶ 5; Pl. Ex. 2, ECF No. 38-2.  Beginning in August 2014,

Plaintiff Won fell behind on his student loan payments.  Def.

CSF ¶ 1; Pl. CSF ¶ 1; Won Decl., Pl. Ex. 5, ECF No. 38-5, ¶ 2-3.

Plaintiff Won failed to make payments on his loan from August

---

[3/] The Court notes that Plaintiff Won did not file a declaration
or any other evidence authenticating the exhibits attached to
his CSF.  Unauthenticated documents cannot be considered in a
motion for summary judgment.  Orr v. Bank of Am., NT & SA, 285
F.3d 764, 773-74 (9th Cir. 2002).  However, at the hearing held
on April 1, 2019, the parties stipulated to the authenticity of
the exhibits attached to Plaintiff Won's CSF.

2014 through December 2016.  <u>Id.</u>  At some point thereafter,
Plaintiff Won defaulted on his loan.[4/]

On December 31, 2016, Plaintiff Won entered into a
rehabilitation agreement with the DOE through its authorized
agent, GC Services Limited Partnership ("GC Services").  Def.
CSF ¶ 2; Pl. CSF ¶ 2; Pl. Ex. 1, ECF No. 38-1.  The
rehabilitation agreement states that when the loan is
rehabilitated and transferred to a new loan servicer "[DOE] will
request that credit reporting agencies remove the record of
default on the rehabilitated loan[]."  Pl. Ex. 1 at p. 3.
Plaintiff Won's loan was successfully rehabilitated in July
2017.  Def. CSF ¶ 4; Pl. CSF ¶ 4; Pl. Ex. 2.  In a letter dated
August 2, 2017 confirming that the loan had been rehabilitated,
GC Services stated that "[t]he [DOE] will report the loan[] to
the credit reporting agencies to reflect a current status, and
the [DOE] will no longer report the loan[] as in default
status."  Pl. Ex. 2.  Servicing of the loan was subsequently
transferred from Defendant Nelnet to Navient, another loan
servicer, on or about August 2, 2017.  Def. CSF ¶ 5; Pl. CSF ¶
5; Pl. Ex. 2.

On September 22, 2017 Plaintiff Won sent a letter to
Defendant Nelnet and requested that it remove the record of

---

[4/] Nothing in the record indicates when, precisely, Plaintiff
Won's loan was determined to be in default.

default from his credit history in accordance with the terms of the rehabilitation agreement.  Pl. CSF ¶ 22; Pl. Ex. 6, ECF No. 38-6.  On September 27, 2017, Defendant Nelnet responded to Plaintiff Won's first inquiry with a letter stating that no adjustments to Plaintiff Won's credit history were required, and that the default would remain on his credit report for seven years from the date of default.  Pl. CSF No. ¶ 23; Pl. Ex. 8. Notwithstanding this letter, Defendant Nelnet sent an Automated Universal Data ("AUD") form to the credit reporting agencies ("CRAs") indicating that the loan was transferred to another servicer, current, and reflected a "0" balance.  Def. CSF ¶ 6; Def. Ex. A, ECF No. 13-3; Pl. CSF ¶ 6.

On October 1, 2017, Plaintiff Won sent a second letter to Defendant Nelnet acknowledging that it changed the status of the loan but arguing that the rehabilitation agreement also required removal of the record of default from his credit history.  Pl. CSF ¶ 22; Pl. Ex. 7, ECF No. 38-7.  Defendant Nelnet responded on October 6, 2017 with a letter identical to the one it sent on September 27, 2017.  Pl. CSF ¶ 23; Pl. Ex. 9, ECF No. 38-9.

Plaintiff Won next sent dispute letters to three CRAs—Equifax, Experian, and TransUnion.[5/][6/]  Pl. CSF ¶ 24; Pl. Ex. 10, ECF No. 38-10; Def. CSF ¶¶ 7-9; Def. Ex. B, ECF No. 13-4; Def. Ex. C, ECF No. 13-5; Def. Ex. D, ECF No. 13-6.  The dispute letter to Equifax explains that pursuant to the rehabilitation agreement and 34 C.F.R. § 682.405(b)(3), "Department of Education/Nelnet was required to remove any record of default related to the loan."[7/]  Pl. Ex. 10.  The dispute letter also asks Equifax to "contact the Department of Education/Nelnet so

---

[5/] Plaintiff Won's dispute letter to Equifax is dated January 31, 2018.  Pl. CSF ¶ 24; Pl. Ex. 10.  Plaintiff Won did not submit evidence of his letters to Experian and TransUnion.
[6/] The Court notes that on May 18, 2018, Plaintiff Won filed suit against Equifax and TransUnion.  Won v. Equifax Information Solutions, LLC, et al., Civ. No. 18-00186 ACK-RLP (D. Haw. 2018).  Plaintiff Won's complaint against Equifax and TransUnion concerned the same underlying dispute as that of the instant lawsuit.  Plaintiff Won settled his claims against the defendants, and the parties stipulated to a dismissal with prejudice on September 27, 2018.  Exactly one week later on October 4, 2018, Plaintiff Won filed the instant lawsuit.
[7/] Plaintiff Won's CSF states that his dispute letters explained that "removal of the missed payments was required by **both** the express terms of his rehabilitation agreement, as well as federal law pursuant to 34 C.F.R. § 682.405(b)(3)."  Pl. CSF ¶ 25.  The Court, having reviewed Plaintiff Won's dispute letter, notes that he did not explain that removal of the missed payments was required; instead, he explained only that the "record of default" needed to be removed.  See Pl. Ex. 10.  Additionally, the Court notes that Plaintiff Won apparently did not attach a copy of the rehabilitation agreement to his dispute letter.  Moreover, his loan is not governed by 34 C.F.R. § 682.405(b)(3).  34 C.F.R. § 682 governs the Federal Family Education Loan Program, while 34 C.F.R. § 685 governs the William D. Ford Federal Direct Loan Program.  Plaintiff Won's MPN indicates that his student loan was issued under the William D. Ford Federal Direct Loan Program.  See Pl. Ex. 4.

that they can confirm [Plaintiff Won] completed the rehabilitation agreement." Pl. Ex. 10. The CRAs then transmitted Plaintiff Won's dispute notices to Defendant Nelnet via automated credit dispute verification ("ACDV") forms.[8/] Def. Exs. B, C, D; Pl. CSF ¶ 26. Defendant Nelnet sent responses via ACDV forms to Experian, Equifax, and TransUnion on February 14, 2018, March 19, 2018, and March 22, 2018, respectively. Def. CSF ¶¶ 7, 8, 9; Def. Exs. B, C, D; Pl. CSF ¶¶ 7, 8, 9. The ACDV form responses each confirmed that Plaintiff Won's loan had been transferred to a new servicer and that the account was current with a "0" account balance. Def. CSF ¶¶ 7, 8, 9; Def. Exs. B, C, D; Pl. CSF ¶¶ 7, 8, 9.

Plaintiff Won received the results of Equifax's reinvestigation[9/] on February 15, 2018. Pl. Ex. 3, ECF No. 38-3. The results indicate that his student loan account was closed in July 2015; the status is "Pays As Agreed;" the balance amount is reported as "$0;" and the account history indicates past due payments for each month from October 2014 through June 2015. Pl. Ex. 3.

---

[8/] The ACDV forms indicate that Defendant Nelnet received three notices of disputes as follows: the first from Experian on February 12, 2018, Def. Ex. B; the second from Equifax on March 16, 2018, Def. Ex. C; and the third from TransUnion on March 19, 2018, Def. Ex. D.

[9/] Section 1681i obligates CRAs to conduct "reinvestigations" when a consumer files a dispute with the CRA. 15 U.S.C. § 1681i(a).

Plaintiff Won then filed suit against Defendant Nelnet alleging that it did not comply with § 1681s-2(b) of the FCRA. See Compl. Plaintiff Won argues that because his loan was successfully rehabilitated, the rehabilitation agreement requires Defendant Nelnet to remove all of the default information from his credit report including the past due payment notifications for the months of October 2014 through June 2015. Defendant Nelnet argues that it is only required to change the "default" status of Plaintiff Won's student loan, and that the rehabilitation agreement does not require it to remove past due payment notifications leading up to the default.

With these facts and the parties' dispute in mind, the Court will now address Defendant Nelnet's Motion.

**STANDARD OF REVIEW**

Defendant Nelnet has asked the Court to dismiss Plaintiff Won's Complaint with prejudice or, alternatively, to grant summary judgment in its favor. Federal Rule of Civil Procedure 12(d) provides that on a motion under Rule 12(b)(6) where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see also Carter v. Stanton, 405 U.S. 669, 671 (1972) (per curiam). Both

parties have submitted CSFs and various extrinsic evidentiary documents that the Court has considered. Accordingly, the Court will treat Defendant Nelnet's Motion as one for summary judgment. See Hamilton Materials, Inc. v. Down Chem. Corp., 494 F.3d 1203, 1207 (9th Cir. 2007).

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts

[and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (internal citation and quotation omitted)).

## DISCUSSION

Prior to considering Defendant Nelnet's Motion, the Court first addresses its Request for Judicial Notice and Plaintiff Won's Objection thereto.

11

## I. Request for Judicial Notice

Federal Rule of Evidence 201 allows the Court to take judicial notice of an adjudicative fact not generally subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201. In addition, the Court may take judicial notice of "matters of public record," but not facts that may be "subject to reasonable dispute." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Defendant Nelnet asks the Court to take judicial notice of Exhibits A-D to the Declaration of Jill Warner, ECF No. 13-2, Defendant Nelnet's Custodian of Records, filed on November 14, 2018 in support of Defendant Nelnet's Motion. Request at 2. Exhibits A-D include the AUD form and three ACDV forms Defendant Nelnet submitted to the CRAs regarding Plaintiff Won's account. Plaintiff Won does not oppose this request, Objection at 2, so it is hereby GRANTED as to Exhibits A-D.

Defendant Nelnet also asks the Court to take judicial notice of Exhibit E, ECF No. 21-2, to the Declaration of Timothy H. Irons, ECF No. 21-1, defense counsel, filed concurrently with the Request on December 19, 2018. Request at 2. Exhibit E is a page on DOE's Federal Student Aid website titled "Getting Out of

Default," which is publicly accessible,[10/] that provides guidance about the DOE's loan rehabilitation program. <u>See</u> Def. Ex. E. "[A] court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." <u>U.S. ex rel. Modglin v. DJO Global, Inc.</u>, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (citing <u>Daniels-Hall v. Nat'l Educ. Ass'n</u>, 629 F.3d 992, 999 (9th Cir. 2010)).

Plaintiff Won objects to this request solely because Defendant Nelnet did not file Exhibit E concurrently with its Motion, having filed it only after the Court prompted Defendant Nelnet to file a CSF. Objection at 2. Plaintiff Won also argues that the Court should ignore any argument in Defendant Nelnet's Reply regarding Exhibit E pursuant to Local Rule 7.4(d), <u>id.</u>, which requires the Court to disregard any argument raised for the first time in a reply. While Plaintiff Won correctly recites the relevant rule, Exhibit E was filed on December 19, 2018, almost three months before Plaintiff Won filed his Opposition on March 11, 2019. Indeed, Plaintiff Won has raised arguments concerning the webpage in his Opposition. Opposition at 24-26. Accordingly, the Court finds that

---

[10/] <u>See</u> <u>Federal Student Aid</u>, United States Department of Education, available at https://studentaid.ed.gov/sa/repay-loans/default/get-out (last visited Mar. 28, 2019).

Plaintiff Won is not prejudiced if it takes judicial notice of Exhibit E, so Defendant Nelnet's request is hereby GRANTED as to Exhibit E.

## II.  FCRA Statutory Framework

Plaintiff Won alleges that Defendant Nelnet violated various duties set forth in § 1681s-2(b) of the FCRA.  First, he alleges that Defendant Nelnet failed to investigate and correct the information he disputed to the CRAs.  Second, he alleges that Defendant Nelnet failed to report back to the CRAs that he continued to dispute the accuracy of his student loan account.

The FCRA exists "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  To achieve this goal, § 1681s-2 imposes certain duties on sources of consumer credit information, termed "furnishers," that provide credit information to CRAs.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009).

Section 1681s-2 outlines two categories of furnisher responsibilities.  Section 1681s-2(a) concerns the duty of furnishers to provide accurate information to CRAs, while § 1681s-2(b) establishes what a furnisher is required to do upon receiving notice from a CRA that a consumer has filed a dispute with a CRA.  15 U.S.C. § 1681s-2.  The § 1681s-2(a) duties are

only enforceable by federal or state agencies.  Gorman, 584 F.3d
at 1154 (citing 15 U.S.C. § 1681s-2(c) and (d)).

Section 1681s-2(b) enumerates five furnisher duties
that are triggered when a furnisher receives notice from a CRA
that a consumer has filed a dispute with the CRA about
information in the consumer's credit report.[11/]  Gorman, 584 F.3d
at 1154 (citing 15 U.S.C. § 1681s-2(b)(1) and Nelson v. Chase
Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir.
2002)).  Section 1681s-2(b) provides that after receiving notice
of a dispute from a CRA, the furnisher shall:

> (A) conduct an investigation with respect to
> the disputed information;
> (B) review all relevant information provided
> by the [CRA] pursuant to section 1681i(a)(2)
> of this title;
> (C) report the results of the investigation
> to the [CRA];
> (D) if the investigation finds that the
> information is incomplete or inaccurate,
> report those results to all other [CRAs] to
> which the person furnished the information
> and that compile and maintain files on
> consumers on a nationwide basis; and
> (E) if an item of information disputed by a
> consumer is found to be inaccurate or
> incomplete or cannot be verified after any
> reinvestigation under paragraph (1), for
> purposes of reporting to a [CRA] only, as
> appropriate, based on the results of the
> reinvestigation promptly—
> (i) modify that item of information;
> (ii) delete that item of information; or

---

[11/] When a CRA receives a consumer's dispute, the CRA is required
to provide a notice of the dispute and all relevant information
about the dispute to the appropriate furnisher.  15 U.S.C. §
1681i(a)(2).

(iii) permanently block the reporting of
that information.

15 U.S.C. § 1681s-2(b)(1)(A)-(E).  "[T]hese duties arise only

after the furnisher receives notice of [a] dispute from a CRA;

notice of a dispute received directly from the consumer does not

trigger furnishers' duties under subsection (b)."  Gorman, 584

F.3d at 1154 (citing 15 U.S.C. § 1681s-2(b)(1) and Nelson, 282

F.3d at 1059-60).

Sections 1681n and 1681o of the FCRA create a private

right of action for willful or negligent noncompliance with the

FCRA's requirements.  See id. (citing Nelson, 282 F.3d at 1059).

The private right of action against furnishers is limited to

violations of § 1681s-2(b).  15 U.S.C. § 1681s-2(c); see also

Gorman, 584 F.3d at 1154.

**III.  Defendant Nelnet's Motion**

Defendant Nelnet argues that Plaintiff Won's claim

fails because he has not shown that the student loan information

Defendant Nelnet furnished to the CRAs was inaccurate or

misleading.  Motion at 8-12.  Plaintiff Won disagrees, arguing

that Defendant Nelnet's continued reporting of the October 2014

through June 2015 payments as past due, even after Plaintiff Won

successfully rehabilitated his loan, is inaccurate.  The Ninth

Circuit has never expressly held that a plaintiff must make a

showing of inaccurate reporting in order to prevail on a

16

§ 1681s-2(b) claim against a furnisher defendant.  Accordingly, the Court must determine whether Plaintiff Won is required to establish that Defendant Nelnet's reporting was inaccurate.

## A.  Inaccuracy Requirement

The Ninth Circuit requires a plaintiff suing a CRA under § 1681i of the FCRA to make "a prima facie showing of inaccurate reporting."  Carvalho v. Equifax Information Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) (citing Dennis v. BEH-1, LLC, 520 F.3d 1066, 1069 (9th Cir. 2008)).[12/]  In the Ninth Circuit, "an item on a credit report can be 'incomplete or inaccurate' . . . 'because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'"  Id. (citing Gorman, 584 F.3d at 1163).  However, § 1681i only applies to CRAs—not to furnishers.  Nevertheless, several district courts in the Ninth Circuit have dismissed § 1681s-2(b) claims against furnishers because the plaintiff did not plausibly allege

_____

[12/] In Carvalho, the Ninth Circuit interpreted the California Consumer Credit Reporting Agencies Act ("CCRAA") and held that a claim brought under the CCRAA against a CRA requires a plaintiff to show that credit information was inaccurate.  629 F.3d at 890.  Although Carvalho required the Ninth Circuit to interpret the CCRAA, which is substantially based on the FCRA, the court discussed in great detail the requirement that a plaintiff suing a CRA under § 1681i of the FCRA must show that an actual inaccuracy exists.  See id. at 890-91.  The Ninth Circuit first required plaintiffs to make a "prima facie showing of inaccurate reporting" in suits against CRAs in Dennis.  520 F.3d at 1069.

inaccurate reporting.  See, e.g., O'Connor v. Capital One, N.A.,
Case No.: CV 14-00177-KAW, 2014 WL 2215965, at *6 (N.D. Cal. May
29, 2014); Mortimer v. JP Morgan Chase Bank, N.A., No. C 12-1936
CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012); Middleton
v. Plus Four, Inc., No. 2:13-cv-01421-GMN-GWF, 2014 WL 910351,
at *3 (D. Nev. Mar. 7, 2014).

     The First Circuit has addressed this issue and has
held that, as in a claim against a CRA under § 1681i, a
plaintiff is required to establish inaccurate reporting in order
to prevail on a § 1681s-2(b) claim against a furnisher.  See
Chiang, 595 F.3d 26, 37-38; see also DeAndrade v. TransUnion
LLC, 523 F.3d 61, 67 (1st Cir. 2008) (requiring a showing of
inaccurate reporting in claims against CRAs under § 1681i).  In
Chiang, the First Circuit found it inconsistent for plaintiffs
to bear a weightier burden in suits against CRAs than in suits
against furnishers, and that the FCRA's text and purpose of
protecting against inaccurate credit information supported a
requirement for plaintiffs to show actual inaccuracy in suits
against furnishers.  Id.

     Several courts in the Central District of California
have explicitly adopted the analysis of the First Circuit and
granted defendants' motions for summary judgment where the
plaintiffs failed to establish that the furnisher defendants
reported inaccurate or incomplete credit information.  See

Hernandez v. Dietech Fin., LLC, CV 17-4294 GW (JEMx), 2019 WL 856406, at *15 (C.D. Cal. Feb. 1, 2019); Molina v. Synchrony Bank/Walmart, Case No. EDCV 17-1464 JGB (JEMx), 2018 WL 2721903, at *4 (C.D. Cal. Apr. 17, 2018); Scharer v. OneWest Bank, FSB, Case No. CV 13-80 DSF (AGRx), 2014 WL 12558124, at *5 (C.D. Cal. Sept. 8, 2014). Although the Ninth Circuit has never so held that § 1681s-2(b) requires a showing of actual inaccuracy, the Ninth Circuit cited Chiang favorably in Carvalho. 629 F.3d at 890 (citing Chiang, 595 F.3d at 37, for "deeming the term 'inaccurate' in section 1681i(a) to be 'essentially the same' as the term 'incomplete or inaccurate' in section 1681s-2(b)).

For the foregoing reasons, the Court concludes that to survive a furnisher defendant's motion for summary judgment on a § 1681s-2(b) claim, a plaintiff must establish that the furnisher defendant reported incomplete or inaccurate information. As the First Circuit noted in Chiang, the Court emphasizes that "a plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions." 595 F.3d at 38 (citing DeAndrade, 523 F.3d at 67 (emphasis in original)). To survive summary judgment, the plaintiff is "required to present evidence of actual inaccuracies in his account that an alternative investigation might have uncovered." Id. at 41.

Accordingly, the Court must determine whether Plaintiff Won has established that the loan information Defendant Nelnet furnished to the CRAs was factually inaccurate or incomplete. For the reasons that follow, the Court finds that Plaintiff Won has failed to establish that Defendant Nelnet reported inaccurate or incomplete credit information and, therefore, his § 1681s-2(b) claims fail as a matter of law.

## B. Whether Plaintiff Won Has Made a Prima Facie Showing of Inaccurate or Incomplete Reporting

The parties do not dispute that Plaintiff Won's payments on his student loan were delinquent for each month from October 2014 through June 2015 as the results of Equifax's reinvestigation indicate.[13] See Pl. Ex. 3 at p. 4. Defendant Nelnet accordingly argues that because the accuracy of the past due payments on Plaintiff Won's loan are not in dispute, his claims fail as a matter of law.

Defendant Nelnet elaborates on this argument in its Reply and directs the Court to several § 1681s-2(b) cases from courts in the Northern District of California in which plaintiffs disputed delinquent payments that were reported to CRAs during the pendency of the plaintiffs' bankruptcies. Reply

---

[13] Specifically, the results of Equifax's reinvestigation indicate that the loan was 90-119 days past due in October 2014, 120-149 days past due in November 2014, 150-179 days past due in December 2014, and 180 or more days past due in each month from January 2015 through June 2015. Pl. Ex. 3 at p. 3.

at 9-10; see Mortimer v. Bank of Am., N.A., No. C-12-01959 JCS, 2013 WL 1501452 at *11 (N.D. Cal. Apr. 10, 2013); Mortimer v. JP Morgan Chase Bank, N.A., No. C 12-1936 CW, 2012 WL 3155563, at *4 (N.D. Cal. Aug. 2, 2012); Giovanni v. Bank of Am., N.A., No. C. 12-02530 LB, 2013 WL 1663335, at *5 (N.D. Cal. Apr. 17, 2013).

In one of those cases, the court determined that 11 U.S.C. § 362 (the bankruptcy code) does not bar a furnisher from reporting past due payments while a bankruptcy petition is pending and, therefore, that the plaintiff failed to allege that the defendant reported inaccurate or misleading information for purposes of an FCRA claim. JP Morgan Chase Bank, N.A., 2012 WL 3155563, at *3 ("[w]hile it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so"). The court went on to hold that because the plaintiffs did not allege that the furnishers reported inaccurate information in the first instance or after the investigation, the plaintiffs failed to state a claim under the FCRA for failure to investigate or failure to report the investigation results to the CRAs.[14/] Id.

---

[14/] In several similar cases, the plaintiffs argued that the effect of a bankruptcy discharge rendered delinquent payments that the furnisher reported during the pendency of the bankruptcy retroactively inaccurate. Giovanni, 2013 WL 1663335,

Plaintiff Won does not argue that he was timely in making payments on his student loan—thus, it is undisputed the initial reporting of the past due payments was accurate. Instead, Plaintiff Won argues that upon successfully rehabilitating his loan, the rehabilitation agreement required Defendant Nelnet to remove the past due payments from his credit report. He thus alleges that because Defendant Nelnet continues to report the past due payments, Defendant Nelnet is furnishing factually inaccurate credit information to the CRAs in violation of § 1681s-2(b). In order to determine whether Plaintiff Won's assertion is correct, the Court must resolve the principal dispute in this case—that is, whether the rehabilitation agreement requires Defendant Nelnet to cease reporting the payment delinquencies for the months of October 2014 through June 2015.

## C. Whether the Rehabilitation Agreement Requires Defendant Nelnet to Cease Reporting Past Due Payments

The parties both argue that the terms of the rehabilitation agreement, the MPN, the relevant federal

---

at *6; Bank of Am., N.A., 2013 WL 1501452 at *10. In those cases, the courts determined that a bankruptcy discharge acts only as a bar to a creditor's right to enforce a debt, and that nothing in the bankruptcy code prohibits a furnisher from continuing to report prior delinquencies after the debt has been discharged. Id. Thus, the courts held that the reporting was accurate for purposes of the FCRA. Id.

regulations, and the guidance on the DOE's Federal Student Aid website support their positions.

Contract terms are interpreted according to their plain, ordinary, and accepted sense in common speech. Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Haw. 36, 45, 305 P.3d 452, 461 (Haw. 2013) (citation omitted). A contract is ambiguous when its terms are reasonably susceptible to more than one meaning. Id. The parol evidence rule precludes the use of extrinsic evidence to vary or contradict the terms of an unambiguous and integrated contract. Id.

### i. The Rehabilitation Agreement

Paragraph 10 of the rehabilitation agreement's terms and conditions states that after the loan is rehabilitated and transferred to a new loan servicer, "[DOE] will request that the credit reporting agencies remove the record of default on the rehabilitated loan[]." Pl. Ex. 1 at p. 3. The rehabilitation agreement does not define "record of default," and the parties' principal dispute involves the meaning of this phrase. The Court has reviewed the rehabilitation agreement in its entirety and finds that the phrase "record of default" is ambiguous. In addition, the rehabilitation agreement does not contain an integration clause. Thus the parol evidence rule does not bar the Court from looking to extrinsic evidence in order to resolve the ambiguity. See Wong, 130 Haw. at 45, 305 P.3d at 461.

The parties both argue that the terms of the MPN and the federal regulations support their conflicting constructions of the phrase "record of default." Accordingly, the Court will consider the MPN and the relevant federal regulations.

### ii.  The MPN and 34 C.F.R. § 685

Section E of the MPN ("Terms and Conditions") states that the MPN is to be interpreted in accordance with the Higher Education Act of 1965, 20 U.S.C. § 1070 et seq, and the DOE regulations promulgated thereunder. Pl. Ex. 4 at p. 2. The DOE regulations concerning the William D. Ford Federal Direct Loan Program are found at 34 C.F.R. § 685.

### a.  Definition of "Default"

"Default" is not expressly defined in the MPN; however, the MPN states that "[t]he following events will constitute a default on my loan: (1) I do not pay the entire unpaid balance of the loan after [DOE] has exercised its option under [the acceleration provision]; (2) I do not make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I do not comply with other terms of the loan, and [DOE] reasonably concludes that I no longer intend to honor my repayment obligation." Plaintiff Won argues that a "default" as defined in the MPN occurs automatically when a borrower fails to pay for at least 270 days. Opposition at 17. Defendant Nelnet counters that the last clause of this

24

definition indicates that a default is not automatic and that it requires a determination by the DOE. Reply at 7.

The Court agrees with Plaintiff Won that the punctuation in the MPN evidences an intent that only the third default event requires the DOE to reasonably conclude that the borrower no longer intends to honor its repayment obligation. However, the federal regulations, which govern the interpretation of the MPN, support Defendant Nelnet's interpretation. 34 C.F.R. § 685.102 governs "Definitions" under the William D. Ford Federal Direct Loan Program. The regulations define "default" as "[t]he failure of a borrower and endorser, if any, to make an installment payment when due, or to meet other terms of the promissory note, if the Secretary finds it reasonable to conclude that the borrower and endorser, if any, no longer intend to honor the obligation to repay, provided that this failure persists for 270 days." 34 C.F.R. § 685.102(b).

Thus the regulations require a finding by the DOE that a loan is in default. The regulations are bolstered by Paragraph 19 of the Borrower's Rights and Responsibilities Statement in the MPN, which requires the DOE to provide the borrower with 30 days' notice to resume making payments on a defaulted loan before reporting the default to the CRAs. Pl. Ex. 4 at p. 6.

Based upon its reading of the MPN and the DOE regulations governing the MPN, the Court finds that a "default" does not occur automatically.  Rather, a "default" must be declared by the DOE, and the DOE must provide the borrower with 30 days' notice before reporting the default to the CRAs.  Case law supports the Court's position regarding defaults.  See, e.g., Poynter v. U.S., 474 Fed. Appx. 495, 497 (9th Cir. 2012) (recognizing that failure to notify the lender of a change in enrollment status could constitute a default on student loans, but that "the promissory notes contemplate that default is declared by the lender").

**b.  Delinquency versus Default**

Plaintiff Won next argues that Paragraph 19 of the Borrower's Rights and Responsibilities Statement in the MPN indicates default information includes more than just the status of the loan.  Opposition at 19.  Paragraph 19 reads as follows:

> 19.  Consumer reporting agency notification.
> We will report information about your loan
> to national consumer reporting agencies.
> This information will include the
> disbursement dates, amount, and repayment
> status of your loan (for example, whether
> you are current or delinquent in making
> payments).  Your loan will be identified as
> an education loan.
>
> If you default on a loan, we will also
> report this to national consumer reporting
> agencies.  We will notify you at least 30
> days in advance that we plan to report
> default information to a consumer reporting

> agency unless you resume making payments on
> the loan within 30 days.  You will be given
> a chance to ask for a review of the debt
> before we report it.

Pl. Ex. 4 at p. 6 (emphasis added).

The Court finds that the plain language of Paragraph 19 indicates that the MPN contemplates delinquent payments and defaults as two distinct concepts.  This construction comports with the Court's earlier finding that a default does not occur automatically.  While a default requires the DOE to provide the borrower with 30 days' notice before reporting the default information to the CRAs, the loan's repayment status (which includes delinquent payments) is reported to the CRAs without notice to the borrower.

Paragraph 19 of the MPN's expressly distinguishes between delinquent payments and default information.  While the rehabilitation agreement contemplates the removal of the "record of default" from the borrower's credit history, it does not contemplate removal of delinquencies.  Thus, reading the rehabilitation agreement in conjunction with the MPN supports a finding that Defendant Nelnet was not required to remove the payment delinquencies from Plaintiff Won's credit history after Plaintiff Won successfully rehabilitated his loan.

### c. Federal Regulations Concerning Rehabilitation

The DOE regulations that govern the loan rehabilitation program for William D. Ford Federal Direct Loan Program are found at 34 C.F.R. § 685.211(f). The regulations provide that "[i]f a defaulted loan is rehabilitated, the Secretary instructs any consumer reporting agency to which the default was reported to remove the default from the borrower's credit history." 34 C.F.R. § 685.211(f)(8). Another regulation, however, states that "[t]he written rehabilitation agreement informs the borrower of the effects of having the loan rehabilitated (e.g., removal of the record of default from the borrower's credit history and return to normal repayment)". 34 C.F.R. § 685.211(f)(1)(iv).

The latter regulation provides an example of the effect of a successful rehabilitation. The example notes the removal of the record of default and return to normal repayment. Here, the rehabilitation agreement expressly provides for the removal of the record of default, but it does not provide for return to normal repayment. See Pl. Ex. 1 at p. 3. As the Court already noted, Plaintiff Won's MPN distinguishes between repayment status—which includes delinquent payments—and default. See Pl. Ex. 4 at p. 6.

The Court thus concludes that the rehabilitation agreement, the MPN, and 34 C.F.R. § 685.211(f) support a finding

that Defendant Nelnet was not required to cease reporting the
delinquent payments to the CRAs upon Plaintiff Won's successful
rehabilitation of his student loan.

### iii. Guidance on the DOE's Federal Student Aid Website

"An agency's interpretation of its own regulations is
'controlling' unless 'plainly erroneous or inconsistent with the
regulation." Chae v. SLM Corp., 593 F.3d 936, 948 (9th Cir.
2010) (citing Auer v. Robbins, 519 U.S. 4452, 461 (1997)). Auer
deference is warranted only when the language of the regulation
is ambiguous. Christopher v. SmithKline Beecham Corp., 635 F.3d
383, 392 (9th Cir. 2011) (citing Christensen v. Harris Cty., 529
U.S. 576, 588 (2000)).[15/]

34 C.F.R. § 685.211(f)(8) describes the effect of a
successful loan rehabilitation—that is, the DOE will instruct
the CRAs to "remove the default" from the borrower's credit
history. 34 C.F.R. § 685.211(f)(1)(iv), on the other hand,
provides that the written rehabilitation agreement informs the
borrower of the effects of a successful loan rehabilitation, and
provides as an example "removal of the record of default from
the borrower's credit history and return to normal repayment."

---

[15/] Conversely, if an agency's regulations are unambiguous,
courts simply apply the regulations as written and any agency
interpretation "is merely 'entitled to respect' to the extent
the interpretation has the 'power to persuade' the court."
Christopher, 635 F.3d at 392 (quoting Christensen, 529 U.S. at
587).

Given the lack of clarity in the regulations as to the effect of a successful loan rehabilitation, the Court finds that the regulations are ambiguous and that it is appropriate to consider the DOE's Federal Student Aid website to assist the Court with interpreting the regulations.

The DOE's Federal Student Aid website constitutes an interpretation of the DOE's regulations and provides information about the DOE's rehabilitation program and the distinction between a delinquency and default. The website features a page titled "Understanding Delinquency and Default."[16/] The page states that a loan becomes delinquent the first day after a borrower misses a payment, and that if a borrower's loan continues to be delinquent, the loan may go into default. See Federal Student Aid, United States Department of Education, http://studentaid.ed.gov/sa/repay-loans/default (last visited Mar. 28, 2019). This information supports the Court's findings that a default is not automatic, and that a delinquency and default are two distinct events.

---

[16/] Neither party asked the Court to take judicial notice of this particular webpage. However, under Federal Rule of Evidence 201(c)(1), the Court "may take judicial notice on its own," and as the Court noted supra, the Court may take judicial notice of information available on websites run by governmental agencies. U.S. ex rel. Modglin, 48 F. Supp. 3d at 1381 (citing Daniels-Hall, 629 F.3d at 999). Accordingly, the Court takes judicial notice of the "Understanding Delinquency and Default" webpage on the DOE's Federal Student Aid website.

Another page of the DOE's Federal Student Aid website is titled "Getting Out of Default," which the Court took judicial notice of <u>supra</u>. Critically, that page indicates that even after a defaulted loan has been rehabilitated and the record of default has been removed, the borrower's "credit history will still show late payments" that were reported by the borrower's loan holder before the loan went into default. <u>See Federal Student Aid</u>, United States Department of Education, http://studentaid.ed.gov/sa/repay-loans/default/get-out (last visited Mar. 28, 2019). The page also states that late payments "will remain on [the borrower's] credit report for seven years from when they were first reported."[17] <u>See id.</u>

Plaintiff Won argues that because he failed to make payments entirely for the months of October 2014 through June 2015, those payments are not "late payments" as the DOE's Federal Student Aid website contemplates. Opposition at 25. This argument fails because common sense dictates that a payment never made is still a late payment.[18]

---

[17] The Court notes that this policy is consistent with the section of the FCRA that requires CRAs to cease reporting certain adverse items of information after seven years. <u>See</u> 15 U.S.C. § 1681c(a)(5).

[18] The Court notes that it appears clear that the delinquencies should continue to be reported, and that failure to report the delinquencies could mislead potential creditors about a borrower's creditworthiness.

For the foregoing reasons, the Court finds that the guidance on the DOE's Federal Student Aid website lends additional support to its conclusion that Defendant Nelnet is reporting accurate information about Plaintiff Won's loan. Plaintiff Won has thus failed to establish that Defendant Nelnet furnished inaccurate or incomplete information to CRAs for purposes of his § 1681s-2(b) claims, and his claims fail as a matter of law.

## D.  Additional Arguments

Defendant Nelnet argues that even if it reported inaccurate information, its investigations were reasonable within the meaning of § 1681s-2(b).  A furnisher is obligated to conduct a "reasonable" investigation when it receives notice of a dispute from a CRA.  <u>Gorman</u>, 584 F.3d at 1157.

The Court finds that it need not address the question of whether Defendant Nelnet's investigations were reasonable because the information that it reported was accurate and complete.  <u>See</u> <u>Scharer</u>, 2014 WL 12558124, at *6 (finding that, as a predicate to liability, a plaintiff alleging unreasonable investigation under § 1681s-2(b) must establish the existence of inaccurate or incomplete information).

Defendant Nelnet further argues that Plaintiff Won has failed to adequately allege damages and, therefore, the Complaint should be dismissed on that basis.  As with Defendant

Nelnet's argument regarding the reasonableness of its investigation, the Court need not address the damages argument because the Court has determined that Defendant Nelnet's reporting was accurate.

**CONCLUSION**

For the foregoing reasons, the Court concludes that Plaintiff Won has failed to establish a genuine issue of material fact as to the accuracy or completeness of the student loan information that Defendant Nelnet furnished to the CRAs. Accordingly, Plaintiff Won's § 1681s-2(b) claims must fail, and Defendant Nelnet is entitled to judgment as a matter of law. Defendant Nelnet's Motion is hereby GRANTED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, April 9, 2019.



Alan C. Kay
Sr. United States District Judge

Won v. Nelnet Servicing, LLC, Civ. No. 18-00381 ACK-RLP, Order Granting Defendant Nelnet Servicing, LLC's Motion to Dismiss, or Alternatively, for Summary Judgment

33